## WILLIAM M. GWIN *v.* JAMES W. BREEDLOVE.

A statute of the state of Mississippi, passed on the 15th of February, 1828, provided that if a sheriff should fail to pay over to a plaintiff money collected by execution, the amount collected, with 25 per cent. damages, and 8 per cent. interest, might be recovered against such sheriff and his sureties, by motion before the court to which such execution was returnable.

A marshal and his sureties cannot be proceeded against, jointly, in this summary way, but they must be sued as directed by the act of Congress.

But the marshal himself was always liable to an attachment, under which he could be compelled to bring the money into court; and by the process act of Congress, of May, 1828, was also liable, in Mississippi, to have a judgment entered against himself by motion.

This motion is not a new suit, but an incident of the prior one; and hence, residence of the parties in different states need not be averred in order to give jurisdiction to the court.

Such parts only of the laws of a state as are applicable to the courts of the United States are adopted by the process act of Congress; a penalty is not adopted, and the 25 per cent. damages cannot be enforced

A marshal who receives bank-notes in satisfaction of an execution, when the return has not been set aside at the instance of the plaintiff, or amended by the marshal himself, must account to the plaintiff in gold or silver; the Constitution of the United States recognising only gold and silver as a legal tender.

THIS case was brought up by writ of error, from the Circuit Court of the United States for the southern district of Mississippi, and arose upon the following statement of facts.

At some period prior to the 13th day of February, 1839, James W. Breedlove, the defendant in error, had recovered a judgment in the Circuit Court of the United States for the southern district of Mississippi, against certain persons there, for the sum of $12,976, with interest at the rate of 8 per cent. per annum, from the 24th of May, 1838, until paid; and on the said 13th of February, an execution was issued upon the judgment, and placed in the hands of Gwin, the marshal. The sum of $5000 was collected in unexcep-

tionable money, and paid over to the plaintiff; the balance was received in notes of the Commercial Bank of Vicksburg, and Planter's Bank of Mississippi, which the plaintiff refused to receive.

At the November term, 1839, of the Circuit Court of the United States, Breedlove moved for a judgment against Gwin, the marshal, for the sum of $7976, being the balance due to the plaintiff on the execution. This motion was made under a statute passed by the legislature of Mississippi on the 15th day of February, 1828, which had been adopted in the practice of the Circuit Court by a rule of that court. The statute provided, (Howard and Hutchinson, 296,) that if the sheriff should fail to pay, on demand by the plaintiff, money collected by execution, such sheriff and his sureties should be liable to pay to the plaintiff the whole amount of money so collected, together with 25 per cent. damages thereon, with interest at the rate of 8 per cent. per annum, to be recovered by motion before the court to which such execution is made returnable. The statute further provided for a jury, if the sheriff should deny that the money was collected by him. In case the sheriff failed to return an execution on the return day thereof, (Howard and Hutchinson, 298,) the plaintiff was allowed to recover judgment against the sheriff and his sureties, with 5 per cent. damages, by motion before the court. It was also declared to be a misdemeanor for the sheriff to refuse to pay over money which he had collected, and punishable on conviction, by removal from office. Howard and Hutchinson, 299.

The reasons filed in support of the motion were, that the marshal had made the money and failed, or refused, to pay it over to the plaintiff.

Gwin demurred to the motion; but the demurrer being overruled, he filed four pleas. In the first two, he denied having received money. In the last two, he alleged that he had collected and received notes of the Planter's Bank of the State of Mississippi, and of the Commercial and Rail Road Bank of Vicksburg, due and payable on demand, when said banks were paying gold and silver on all their notes payable on demand; which notes, so collected and received, were collected and received without any instructions from the plaintiff or his attorney that gold or silver would be required, and at a time when the bank-notes received were the current circulating medium; and the same were tendered to the attorney of the plaintiff, before the suspension of specie payments by any or either of said banks—all of which said bank-notes said defendant had always been ready and

willing, and was then ready and willing, to pay over to the plaintiff or his attorney.

The plaintiff joined issue upon the first two pleas, and replied, specially, to the last two, that the defendant was, previous to the reception of the notes, instructed, that gold or silver would be required of him. Issue was joined upon the last two replications.

Evidence was offered at the trial, that the attorney of the plaintiff, Breedlove, told the marshal frequently, before the money was collected, that specie would be required; that he had demanded the money of the marshal, who refused to pay him; that the marshal never tendered him any bank-notes, and that the notes of those banks, before their suspension, were received in the community everywhere as specie, and by the sheriffs and officers in collection of executions.

The execution was issued on the 13th of February, and the banks suspended specie payments on the 15th or 22d of March, 1839.

The counsel for the defendant prayed the court to instruct the jury as follows:

1. That if the jury believe from the evidence that bills of exchange and bank-notes were received by the marshal, and not gold or silver, then the jury will find the issues on the first and second pleas in favour of the defendant.

2. If the jury believe that the instructions given to the marshal were intended to authorize the marshal to collect gold or silver, or its equivalent, and he collected bank-notes which were equivalent to gold or silver, then they should find the issue for the defendant.

3. And that if they find that the marshal received bank-notes or bills of exchange and not money in specie, which the plaintiff refused to receive as money, then they must find the issues for the defendant, as the issue is, whether he received and collected money or not.

The first and third of which charges, the court refused to give, but gave the second charge to the jury; to which refusal to give the first and third charges, the defendant excepted.

The jury found for the plaintiff.

*Walker*, for Gwin, the plaintiff in error.
*C. Cox*, for the defendant.

*Walker* made the following points:
1. That the statute of Mississippi had not been strictly pursued.
2. That it did not apply to marshals of the United States.

Gwin v. Breedlove.

3. That there is a want of jurisdiction, inasmuch as the record does not show, in any part of it, that Breedlove was not a citizen of Mississippi.

1. The statute is highly penal in its character; and, therefore, like all other penal statutes, must be construed strictly. It provides (Howard and Hutchinson, 296) two remedies against sheriffs; one for not paying over the money which they may have collected, and the other for neglecting to levy the execution. The motion below was under the first head, which was an erroneous proceeding, because bank-notes are not money. The return states the collection to have been in bank-notes; but, if they had been notes of a mercantile firm, it would clearly not have been money. The one is no more money than the other. The statute is so highly penal that a refusal on the part of the sheriff to pay, is declared to be a misdemeanor, (page 299,) and punished by removal from office.

The agreement of the sheriff, to receive any thing but money, does not bind the plaintiff. 5 Howard, 246. Where the sheriff returned that he had received bank bills, it was not considered a legal return or binding on the plaintiff, and a new execution was awarded. 5 Howard, 621. A sheriff cannot take a negotiable note and return the execution satisfied. 1 Cowen, 46. The payment must be in cash. 9 Johnson, 263. There being no money received, the remedy pursued ought to have been for omitting to collect the money. Howard and Hutchinson, page 642, sec. 42.

2. The statute does not apply to marshals. It was passed on 16th February, 1828. The process act of Congress was passed on 19th May, 1828; but no rule of court has ever adopted the state law. How came marshals, then, to be under the state law? Their duties are pointed out by acts of Congress, (Gordon's Digest Laws of the United States, articles 610—611,) and a party injured may sue on their bond and recover damages legally assessed. But the sheriffs, under the state law, are subject also to a penalty of 25 per cent. in addition: Can the marshals be legislated by a state into this responsibility? The sheriffs are also to be removed from office: Can a state law require the President of the United States to remove a marshal? If not, where can the line be drawn?

The words in the act of Congress of 1828 are borrowed from the act of 1792, and direct that the process at common law used in state courts should be adopted in the courts of the United States. But the process in the original suit below had been exhausted. The

motion against the marshal was a new proceeding, and not a part of the process of the other case.

10 Wheat. 1, 32; 6 Peters, 658; 7 Cranch, 654; 1 Howard, 300. 2 Dallas, 396, 5 Mason, 26, 12 Peters, 300, } that attachment laws of states are not included in the process act.

The courts of the United States do not adopt state, criminal, or penal laws; 17 Johnson, 1, 4.

3. Breedlove is not shown in the record to have been a citizen of another state. This court has decided that, as the courts of the United States are of limited jurisdiction, it must appear on the face of the record. 10 Wheat. 192; 2 Cranch, 9; 2 Bald. C. C. R. 275; 13 Peters, 45; 4 Wash. C. C. R. 32.

*C. Cox,* for defendant, argued:

1. That it was no ground of exception to defendant's motion; that it does not show him to be a citizen of a state other than Mississippi; in all other respects it is formal.

2. The plaintiff was accountable on his return, and on the facts established by the verdict, for the amount of $7000 in money.

3. The statute of Mississippi is applicable to the present case.

1. The question of jurisdiction was settled by the original judgment; and a ministerial officer of the court cannot be permitted to raise the objection. After an appearance, the objection cannot be made. 3 Peters, 459; 5 Howard, 432; 9 Peters, 156.

2. Issue was joined below upon the question whether the marshal received notice that coin would be required, and decided against him. The plaintiff below was, therefore, entitled to consider the marshal's return as of money. A tender of bank-notes is good, unless objected to. 10 Wheat. 333.

3. The act of Congress of 1828 was subsequent to the statute of Mississippi. Process means the proceedings until the end of the suit, the possession of the fruits of the judgment. 10 Wheat. 1, 51.

The statute of Mississippi was adopted by rule of court.

The bond of the marshal is a cumulative remedy. All courts have authority over their officers, and the remedy for injury is by motion. There is nothing unusual in the proceeding. All amercements are penal. In 9 Peters, 156, a judgment was entered on motion and refused to be re-opened.

VOL. II.—5

*Walker*, in reply.

If the return of the marshal was that the execution was satisfied, was it not an end of that suit?

No matter who makes the question of jurisdiction, the court will always notice it. The original judgment does not settle it, because the proceedings there do not make the necessary averment.

The case in 9 Peters does not apply: there is no case where the penal laws of a state have been applied to marshals.

Mr. Justice CATRON delivered the opinion of the court.

The writ of error in this case is prosecuted by the former marshal to reverse a judgment recovered against him by motion in the Circuit Court of the United States for the district of Mississippi. The proceeding in this form, is founded on a law of that state governing sheriffs; as will be seen by the statement of the reporter.

The first objection raised on behalf of the plaintiff in error is, that it does not appear on the record, that Breedlove was a citizen of a different state from the defendant; and therefore it is insisted the court below had no jurisdiction as between the parties. As this does not appear, in an ordinary case jurisdiction would be wanting. On the other hand, it is contended that the motion against the ministerial officer of the court for not performing his duty, was an incident; and part of, the proceeding in the suit of Breedlove against Marsh and others, in which the execution issued; and that no question of jurisdiction can be raised.

The motion for a judgment being a proceeding according to the statute of Mississippi, it is also objected that Congress by the act of 1806 (ch. 31,) had provided a complete and exclusive remedy on marshal's bonds by suit; but if it was otherwise; still, the additional remedy furnished by the state law when substituted, must be treated as an independent suit, in like manner as an action on the marshal's bond, and the residence of the parties be such as to give the federal court jurisdiction.

These propositions are so intimately blended that it is most convenient to consider them together.

We think it true beyond doubt, that if the bond had been proceeded on against the marshal and his sureties, it could not have been done by motion, according to the state practice prescribed by the statute of Mississippi; but the proceeding must have been accord-

Gwin *v.* Breedlove.

ing to the act of Congress. Yet before the act of 1806 was passed, and ever since, the common law remedy by attachment has been the most usual to coerce the marshal to perform his various duties; and among others, to bring into court moneys collected on executions. So in the state courts, nothing is more common than to proceed by attachment against the sheriff, instead of resorting to a summary motion, for judgment against him by force of a statute, where he withholds moneys collected. The marshal's bond is for twenty thousand dollars; the sureties are bound to this amount only; and if no other remedy existed save on the bond, after the penalty was exhausted, he might set the court at defiance: the marshal could also be sued in assumpsit, by the plaintiff in the execution. It has therefore never been true, that a suit on his bond, governed by the acts of Congress, furnished the exclusive remedy as against the marshal himself; and we think that Congress intended by the new process act of 1828, to add the cumulative remedies, then existing by statute, in the new states, where they could be made to apply, because they were more familiar to the courts and country, and better adapted to the certain and speedy administration of justice. In our opinion, the act of Mississippi authorizing a judgment by motion, against a sheriff for failing to pay over moneys collected on execution, to the party on demand, or into court at the return day, was adopted by the act of 1828, and does apply in a case like the present, as a mode of proceeding in the courts of the United States, held in the district of Mississippi; and could be enforced against the marshal in like manner it could be against a sheriff in a state court.

The same facts that justified the judgment against the goods, &c., of the marshal, would have authorized an attachment against his person; operating even more hastily than a *capias ad satisfaciendum*, founded on a judgment; and therefore no objection to this means of coercion can be perceived, that did not apply with still more force to the old mode by attachment. The latter remedy was never deemed an independent suit, but a means to compel the ministerial officer of the court to perform his duty, so that the plaintiff should have the fruits of his judgment; and the same end is attained by the new remedy under the state law; each, is an incident of the suit between the plaintiff and defendant to the execution; of which the proceeding against the officer is part; and to that suit the question of jurisdiction must be referred: It follows the officer had no right to raise the question.

The next inquiry is, to what extent does the statute of Mississippi apply to the courts of the United States held there?

It is contended for the defendant in error, that the act of Congress of 1828, did intend, and could only have intended, to adopt the state law entire; that when the process and modes of proceeding were adopted, the provision carried with it the penalties prescribed to enforce their performance; to recognise part as governing the practice of the federal courts, and reject other parts, as not applicable to them, would break up the whole system. That so doing is a delicate, and difficult duty, experience has taught us; it is impossible, however, to do otherwise in many cases. That of Amis v. Smith, 16 Peters 303, was an instance. It also came up from Mississippi. By the laws of that state, the sheriff is commanded to take a forthcoming bond for the delivery of property on the day of sale, levied on by virtue of an execution; if the bond is forfeited for not delivering the property, it operates as a new judgment against the defendant to the execution, and also against the sureties to the bond; and no writ of error is afterwards allowed to reverse the original judgment. Pursuant to the laws of Mississippi a delivery bond had been taken by the marshal; it was forfeited, and then the defendant prosecuted a writ of error to this court to reverse the judgment on which the execution issued. It was held here, that that part of the state law authorizing the delivery bond to be given, was adopted by the act of 1828, and that a new execution might issue on it; but the part cutting off the writ of error must be rejected. An other instance will be given, which is presented by the statute of Mississippi, on which the present motion against the marshal was founded. The 27th and 28th sects. enacts, that if the sheriff shall make a false return on an execution or other process, to him directed, for every such offence he shall pay a fine of $500, one half to the plaintiff, and the other half to the use of the literary fund, recoverable by motion. If the fact that the return is false does not appear of record, the court shall immediately empannel a jury to try such fact, and on its being found, proceed to assess the fine.

The recovery of the penalty, could with quite as much propriety have been on conviction by indictment as on a summary motion; and in neither mode can it be plausibly contended that the courts of the United States could inflict the penalty on its marshal; the motion and assessment of the fine, being distinct from the process and mode of proceeding in the cause of which the execution was

part, on which the false return was made. This being an offence against the state law, the courts of the state alone could punish its commission; the courts of the United States having no power to execute the penal laws of the individual states.

A judgment below, for 25 per cent. damages was given against the marshal for failing to pay over the debt collected; the penalty amounted to $1750. The motion for judgment was founded on the 25th section of the act; it declares judgment on motion shall be rendered against the marshal, for the money collected, with legal interest: and also, for 25 per cent. damages on the amount.

This is just as much the infliction of a penalty, as if a fine had been imposed under the 27th and 28th sections for a false return; and for the same reasons was beyond the competency of the Circuit Court; and for so much the judgment cannot stand.

We next come to the question whether the marshal is rendered liable by his return, and the proofs, and pleadings.

By the state statute he was allowed to contest the fact by pleading to the motion, that he had not received the money. He first demurred to the written grounds of the motion; being in the nature of a declaration. The demurrer was over-ruled, and the defendant had leave given to plead over. He pleaded 1st, That he did not receive or collect on said execution the moneys specified in the motion. The 2d plea is to the same effect, but for the larger sum, including a bill of exchange, about which there is no controversy.

3d. That he received and collected the notes of the Commercial and Railroad Bank of Vicksburg, and the Planter's Bank of Mississippi, due and payable at said banks; and which were paying specie on their notes on demand; that is on the 12th day of March, 1839; which notes were collected and received without any instructions from the plaintiff or his attorney that gold or silver would be required; and at a time when the bank-notes were the current circulating medium; and that the same on the day aforesaid were tendered to the attorney of the plaintiff before the suspension of specie payments by the banks—all of which bank-notes he has always been ready, and is yet ready and willing to pay over to the plaintiff. The 4th plea is the same in substance.

On the first two pleas issues were joined to the country: To the other two, the plaintiff replied—That previous to the reception of the bank-notes, the defendant was instructed that gold and silver would be required upon the execution; and issues were tendered to

D

the country; which were joined on the single point, whether the marshal had been instructed that gold or silver would be required.

Two instructions were asked on behalf of the marshal and refused—First,

"If the jury believe from the evidence that bills of exchange and bank-notes were received by the marshal, and not gold and silver, then the jury will find the issues on the first and second pleas in favour of the defendant."

3d. "And that if they find that the marshal received bank-notes or bills of exchange, and not money in specie, which the plaintiff refused to receive as money, then they must find the issues for the defendant; as the issue is, whether he received and collected money, or not."

The 2d instruction asked was given, and need not be noticed.

The return of the marshal was, that he had received on the execution, bank-notes due on demand and payable in specie—on the two banks, named in the return, amounting to $7000—the subject of the present motion.

No question is, or can be raised, on the two last issues; they were found against the defendant on the proof, that he had been instructed, that nothing but gold or silver would be received in satisfaction. The merits of the case therefore turn on the two instructions refused; they are referable to the facts giving rise to the instructions; the facts briefly are, that the marshal was instructed to collect specie on the execution; he failed to do so, and took bank-notes from the debtor to the amount of $7000 in lieu of specie. A few days after the notes were received, one of the banks at which a part of them were payable suspended specie payments, and its notes thereby became depreciated in value. The instructions raise the question, who shall bear the loss: If the officer's return is treated as a nullity, then it will fall on Marsh and others, defendants to the execution; if the marshal's offer to deliver the notes to Breedlove's attorney, and his plea of tender had been good, then the execution creditor must have sustained the loss—but failing in these grounds of defence the officer must bear it himself.

By the Constitution of the United States (section ten) gold or silver coin made current by law can only be tendered in payment of debts: Nevertheless, if the debtor pays bank-notes, which are received by the creditor in discharge of the contract, the payment is just as valid as if gold or silver had been paid. Had Marsh paid

his creditor Breedlove in the manner he did the marshal, then there can be no doubt Breedlove could not have treated the payment as a nullity, and on this assumption have issued an execution on his judgment, and enforced payment again in specie.

By the writ of execution the marshal was commanded to collect so many dollars; this meant gold or silver of course: And the court of errors and appeals of Mississippi, in the case of Nutt v. Fulgham, (5 How. R. 621,) ordered the return of a sheriff, like the one before us, to be struck out, on motion of the plaintiff in the suit. That court says: " The return of the sheriff, that he took the Union bank-notes. is not a legal return ; and the plaintiff is not bound by it, unless the plaintiff had agreed to receive that kind of money or notes in payment; and no such agreement appears.

In the case before us no motion was made to strike out the return on part of the plaintiff Breedlove ; nor did the marshal ask leave to alter his return, stating he had not made the money : the three parties interested, treated the payment as a valid discharge of the judgment against Marsh ; and we think, for the purposes of this motion, at least, it must be so deemed. Gwin, the marshal, did receive bank-notes in payment, and intended they should be taken in discharge of the execution; the record throughout shows he did so receive them—and, that they were received as money: Still, he could only pay into court gold or silver, if required by the execution creditor to do so; and therefore he ran the risk of converting the notes into specie when he took them; having incurred the risk, the marshal must bear the loss of depreciation. We apprehend this view of an officer's responsibility who collects bank-notes, is in conformity to the general practice of the courts, and collecting officers, throughout the country.

This court therefore reverses so much of the judgment of the Circuit Court, as adjudged the plaintiff in error Gwin, to pay the twenty-five per cent. damages, on the amount recovered against him :—And affirms, the residue of said judgment.

Mr. Justice DANIEL dissented.

I am unable to concur with the majority of the court in their opinion just announced. 'Tis my opinion, that the judgment of the Circuit Court should have been wholly reversed.

Congress, by express enactment, have defined the duties and responsibilities of the marshals, and prescribed the modes in which

they shall be enforced. These express regulations, designed for the government of the peculiar officers of the federal courts, cannot, I think, be varied or controlled by rules established by the states for the conduct of their respective ministerial agents; but must be of paramount authority.

The laws of Mississippi, therefore, denouncing penalties against the misconduct of sheriffs, and directing the manner of enforcing them, cannot govern this case. Should it be conceded, however, that the laws of Mississippi concerning sheriffs could have effect in this motion against the marshal, it seems obvious, to my mind, that the appropriate remedy under the state law for an act like that complained of, has not, in this case, been adopted. The alleged delinquency in the marshal, made the foundation of this motion, a delinquency identically the same for which a like proceeding is authorized against a sheriff, is the refusal to pay over money actually made and in his hands, and collected in satisfaction of an execution. For such a refusal, a peculiar penalty, the very same sought and adjudged by the court in this instance, is provided. By the return of the marshal, relied on in proof by the plaintiff, it is conclusively shown, that the money which the officer was commanded to make, had never been received; but that he had received, in part, that which was not money, and which had never been converted into money, and which the plaintiff, in the execution, would never have received in lieu of money. Nay, the oral evidence introduced by the plaintiff was brought in to prove, that the marshal, in opposition to the plaintiff's positive instructions, had received that which was not money, excluding, upon this proof as well as upon the return, every inference that money had been actually received in satisfaction of the process in his hands. A refusal or an omission to levy or to return an execution, the statutes of Mississippi designate as different and distinct offences, and the conduct of the marshal as shown in the proofs, approaches more nearly to either of these than it does to the misfeasance alleged in the notice, and, for which, the court has awarded a penalty against him, although the fact charged is positively disproved by all the testimony, as it is also by the plaintiff's replications to the defendant's 3d and 4th pleas. But whether or not the conduct of the marshal can in literal strictness be denominated a failure or refusal to levy or to return an execution, it is surely not a failure or refusal to pay over money actually levied, and, therefore, the proceeding, under colour of the statute of Mississippi, is not

the proceeding appropriate to the act of the officer, however that act may be characterized. This is, too, a statutory proceeding, and should strictly conform to the power which authorizes it. It cannot be extended either to modes or objects not clearly embraced within the terms of that authority. It cannot, therefore, in any event, warrant the judgment now proposed, as that is clearly for a penalty wholly different from the one imposed by the law of Mississippi, for an offence such as is assumed by the court to have been committed in this instance. Surely the law of Mississippi either should or should not govern this case.

Again, I do not think that the jurisdiction of the Circuit Court is made out as between the parties to the judgment. The motion on which it is founded is neither process nor a mode of proceeding in the suit between Breedlove and Marsh and Company, nor can it be deemed an execution or process or proceeding upon or regularly incident to the judgment between those parties. It is a distinct and substantive and original proceeding against a third person no party to the controversy. A right of action is claimed against this third person for his own acts or delinquencies, independently of the contract or controversy between the parties to the judgment. In his character of officer of the court, he would, doubtless, be amenable to the authority it possesses to supervise the conduct of its own officer, and to secure the enforcement of its own judgments; an attachment would, therefore, lie against him, to effect these ends of justice. He would, also, be liable upon his official bond as marshal; because the judicial act confers a right of action thereon, without restriction as to citizenship, on all persons who may be injured by a breach of the condition of that bond. But if a farther or different recourse is sought against the marshal, one which may be supposed to arise neither from the inherent power of the court over its peculiar officer, or its judgments; then it is presumed that those who seek such recourse, must show their right as arising out of their character to sue in the federal courts; they must show themselves by regular averment to be citizens of a state other than that of him whom they seek to implead. The present case closely resembles that of Course et al. *v.* Stead et ux., 4 Dall. 22, in which it was ruled that the want of a proper description of parties in a supplemental suit was not cured by a reference to the original suit.

The judgment should, I think, be reversed.

Gwin v. Breedlove.

ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, It is now here ordered and adjudged by this court, that so much of the judgment of the said Circuit Court in this cause as adjudges William M. Gwin, the plaintiff in error, to pay 25 per cent. damages thereon be, and the same is hereby reversed and annulled, and that the residue of the judgment of the said Circuit Court in this cause, be in all respects, and the same is hereby affirmed.