## PULLMAN'S PALACE-CAR CO. v. WASHBURN.

(Circuit Court, D. Massachusetts. March 8, 1895.)

No. 336.

1. INDORSEMENT OF WRIT—MASSACHUSETTS STATUTE — COSTS AFTER REMOVAL TO FEDERAL COURT.

A statute of Massachusetts (Pub. St. c. 161, § 24) provides that "original writs, * * * in which the plaintiff is not an inhabitant of the commonwealth, shall, before entry thereof, be indorsed by some sufficient person who is such inhabitant," who shall be liable for costs. *Held*, that the indorser of a writ, under this statute, is liable for costs incurred in a federal court after removal to it of a suit commenced in a state court, as well as for the costs in the state court.

2. FEDERAL COURTS—JURISDICTION—ANCILLARY PROCEEDINGS.

*Held*, further, that a writ of scire facias to enforce, against such indorser of a writ, a liability for costs under a judgment of a federal court, is not an original but an ancillary proceeding, of which the federal courts have jurisdiction without regard to the citizenship of the parties or the amount in controversy.

3. JUDGMENTS—COLLATERAL ATTACK.

A judgment, rendered in a federal court, in an action removed from a state court, cannot be collaterally attacked for want of proper jurisdictional allegations in the petition for removal.

4. SAME.

A judgment cannot be collaterally attacked merely because erroneous and voidable on a writ of error as between the parties to it.

5. SAME—PRIVIES.

The indorser of a writ is privy to a judgment against the plaintiff in such writ, and cannot, upon scire facias against him, dispute the validity of such judgment.

This was a writ of scire facias sued out by the Pullman's Palace-Car Company against Frank L. Washburn to enforce against him a liability for costs as indorser of the writ in an action brought against the Pullman's Palace-Car Company by one Maggie M. Harrison, in which a judgment had been rendered against the plaintiff for $813.94, costs.

Johnson & Underwood, for plaintiff.

Freedom Hutchinson, for defendant.

PUTNAM, Circuit Judge. The pith of the statute by virtue of which the indorsement of the writ in the original cause was made by the defendant in this suit, as found in Public Statutes of Massachusetts (chapter 161, § 24), is as follows:

"Original writs, * * * in which the plaintiff is not an inhabitant of the commonwealth, shall, before entry thereof, be indorsed by some sufficient person who is such inhabitant. * * * Every indorser, in case of avoidance or inability of the plaintiff, shall be liable to pay all costs awarded against the plaintiff, if the suit therefor is commenced within one year after the original judgment."

The present suit is by scire facias, issued out of this court against the indorser. The original writ was brought in the state court, and removed to this court on the petition of the Pullman's Palace-Car Company, the present plaintiff, and defendant in the original suit. The petition for the removal was filed in the state

court July 12, 1889, and failed to set out sufficient jurisdictional facts touching the Pullman's Palace-Car Company. We are not furnished with the other papers which were on file in the state court when or before the removal was effected.

The grounds of defense are as follows: First, that the indorser's liability does not include the costs which accrued in the circuit court; second, that, as it appears on the face of the declaration in the present cause that the matter in dispute is less than the sum or value of $2,000, this court has no jurisdiction; third, that the present defendant can take advantage in this suit of the want of proper jurisdictional allegations in the petition for removal.

We think there is no difficulty in regard to the first point of defense. The defendant in this case voluntarily assumed his responsibility, and, by the terms of the statute covering the indorsement, he voluntarily made himself "liable to pay all costs awarded against the plaintiff." The defendant overlooks the fact, when urging that there is no law or rule of this court which creates against him a liability for the costs claimed in this case, that the liability comes from no rule or law of any court, but from the contract of the parties. There is nothing in the terms of the obligation assumed, or in the substance of the subject-matter, which leads to any other construction of the obligation than that it related to all costs in the suit. The fact that the case was transferred to the circuit court did not change the identity of the suit. It remained the same throughout. The defendant in this case having voluntarily assumed an obligation, plain and simple in its terms, he ought not to be discharged from it, unless there is something in the condition of the litigation arising from the removal which makes it necessary that he should be. We see nothing of that character. It is true that our old rule 40, which was in force when this suit was removed, and which has been succeeded by the present rule 6, provided for security for costs in this court. But the rule, in the first place, makes it optional for the defendant to ask for such security; and, further, whether the security shall be ordered depends on the exercise of judicial discretion. It is not to be assumed that this qualified provision for security deprives a defendant of an absolute right, given him by statute, and vested in him before a suit is removed. If it applies at all to suits which are removed by a defendant, which we need not consider, it should be regarded as an optional, cumulative remedy, with reference to which the court, in the exercise of judicial discretion, will give due consideration to the fact that security has already been obtained by an indorsement of the writ. All doubts arising from this rule are removed by the provision of the act of March 3, 1875, c. 137, § 4 (18 Stat. 471), to the effect that "all bonds, undertakings, or securities given by either party in the suit prior to its removal, shall remain valid and effectual notwithstanding such removal." This has clearly not been repealed by subsequent legislation, and is of the broadest application. No term can be more sweeping in this connection than the word "undertakings," and it clearly covers the indorsement in this case. Therefore, if the

rule referred to could be assumed to have the effect of discharging the liability of the indorser, it would, to that extent, be invalid as conflicting with the law. It is true this statute leaves it to be ascertained what are the nature and extent of the undertaking, so that if the statutory indorsement, by its proper construction, covers only costs in the state court, it would fall so far as costs in the circuit court are concerned. That there is no reason for thus limiting its plain and simple terms we have already remarked.

Also, the second proposition in defense, we think, there is no difficulty in meeting. From the earliest reported cases in Massachusetts, proceedings against the statutory indorsers of writs have been almost universally by scire facias. The appropriateness of this is apparent when it is considered that every allegation involved is a matter of record in the court from which the scire facias issues, except that of the genuineness of the signature of the alleged indorser. Of course, we are considering only the class of writs of scire facias which issue on matters of judicial record in courts of common law. In McGee v. Barber, 14 Pick. 212, Chief Justice Shaw, on page 215, referring to scire facias against an indorser, said it is clearly analogous to that against bail, and described the writ issuing against an indorser as a judicial one. Indeed, in all respects this proceeding is in harmony with the definition of the writ of scire facias found in 8 Bac. Abr. p. 598, as follows:

"Scire facias is deemed a judicial writ, and founded on some matter of record, as judgments, recognizances, and letters patent, on which it lies to enforce the execution of them or to vacate or set them aside."

It is true that, unlike some other judicial writs,—as, for example, the ordinary writs of execution,—this writ of scire facias is so far in the nature of an original that the defendant may plead to it; so that the proceeding is considered as an action, and is embraced in a release of actions. But it is said on the highest authority that, when it is founded on a recognizance, its purpose is, as in cases of judgments, to have execution, and, although it is not a continuation of a former suit as in the case of an execution, yet, not being the commencement and foundation of an action, it is not an original, but a judicial, writ, and, at most, is only in the nature of an original action. It can lie only out of the court where the recognizance is entered of record, or the court to which the same has been removed, as in the case before us. These expressions, it is to be noticed, are guarded with the words "in the nature of an original writ." At common law, the distinction between original and judicial writs was of such a substantial character that no degree of similarity touching the proceedings following their issue was sufficient to confound them. The original writ always issued from the chancery. Blackstone says (3 Bl. Comm. p. 273) it was a "maxim introduced by the Normans that there should be no proceedings in common pleas before the king's justices without his original writ, because they held it unfit that these justices, being only the substitutes of the crown, should take

cognizance of anything but what was thus expressly referred to their judgment." It therefore follows that, as this particular writ cannot initiate litigation, it only marks a stage in the course of proceedings already commenced, in whatever terms that stage may be characterized. It follows, further, that proceedings by scire facias of the character which we are considering fall into the class commonly known in the language of the federal courts as ancillary.

It is true that in Society v. Ford, 114 U. S. 635, 5 Sup. Ct. 1104, it was held that an action of debt on an ordinary judgment of a circuit court does not raise any question under the laws of the United States, and would not fall within the jurisdiction of the circuit courts without proper diverse citizenship; but an action of debt was, at common law, commenced by a writ out of chancery, so it does not afford us any guide with reference to scire facias. The liberal construction given by the supreme court to the word "ancillary" in this connection is illustrated by Gwin v. Breedlove, 2 How. 29, where it was held that an attachment against a marshal to compel him to bring money into court is not a new suit, but an incident of the prior one; by Dietzsch v. Huidekoper, 103 U. S. 494, where it was held that the circuit court might, on a bill brought for that purpose, enjoin a suit in the state court on a replevin bond given in a replevin suit removed to the circuit court, and that the bill was ancillary; by Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, and other cases of the same class, where the circuit court has taken jurisdiction to determine the title to property attached on its writ, or otherwise under its control; by Pacific R. Co. of Missouri v. Missouri Pac. Ry. Co., 111 U. S. 505, 4 Sup. Ct. 583, where a bill was entertained to set aside a former decree of the circuit court, and held to be ancillary; by Dewey v. Coal Co., 123 U. S. 329, 8 Sup. Ct. 148, where proceedings to set aside a conveyance by persons charged with a debt in the same court were held to be ancillary; by Johnson v. Christian, 125 U. S. 642, 8 Sup. Ct. 989, 1135, where the circuit court took jurisdiction of a bill to enjoin the enforcement of its own judgment at common law, the supreme court holding that no other court could interfere with that judgment; and by Lamb v. Ewing, 54 Fed. 269, where the circuit court of appeals for the Eighth circuit held that a suit on a bond given to refund the amount of a judgment, if reversed, was ancillary to the original proceeding. In all these cases jurisdiction was held, regardless of the citizenship or the amount involved. Reilly v. Golding, 10 Wall. 56, seems to be strictly in point. There suit was commenced in the state court, where what was styled "a forthcoming bond" was given, to obtain redelivery of property attached. Afterwards the case was removed to the circuit court of the United States, and judgment obtained; and, according to the local practice, a rule was entered against the surety on the "forthcoming bond" to show cause why he should not be condemned to pay the debt. The supreme court sustained the jurisdiction, regardless of citizenship, holding that the proceeding was merely incidental to the principal suit. That case involved several of the most im-

portant points in the case at bar,—among the rest, that this is an incidental suit, and that in a proceeding on an obligation given in the state court, touching the payment of a judgment or some part thereof, the circuit court, after removal, may administer the peculiar local remedy, especially when the obligation itself is peculiarly local. We do not find that in any case whatever, on scire facias or by mandamus, of an incidental or ancillary character, the supreme court has indicated that the amount in controversy is of any consequence. Rev. St. § 716, vests in the federal courts power to issue writs of scire facias. While, of course, under the constitution, this cannot be accepted as a universal power, nevertheless it is well settled that the various statutory limitations on the jurisdiction of the federal courts, with reference to amounts in controversy and citizenship of the parties, relate entirely to litigation as to which there is a concurrent remedy in the state tribunals. In re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221; King v. Asylum, 64 Fed. 331, 333. This principle applies to the pending case, because, for the reasons already given touching the intrinsic nature of scire facias against bail, and, by analogy, against this indorser, the state court could issue no writ of that class on a record which had been removed to the circuit court.

For these reasons, we fully agree with the plaintiff as to the second proposition.

The third point seems to be covered by the decisions of the supreme court. No doubt there are judgments of the circuit courts and district courts which are void when attacked, even though by habeas corpus by or on behalf of parties to them. Some of these are of the classes described in Noble v. Railroad Co., 147 U. S. 165, 173, 13 Sup. Ct. 271; others are of that of Ex parte Rowland, 104 U. S. 604; others, of that of In re Burrus, 136 U. S. 586, 10 Sup. Ct. 850; others, where the judgment was not the act of the court, as in Lamaster v. Keeler, 123 U. S. 376, 8 Sup. Ct. 197; and still others are of the class where the court assumes to proceed clearly in violation of rights secured to a citizen by the constitution. Whether it may always be easy to distinguish the cases referred to from that at bar we need not determine, because that a judgment rendered on a suit brought in the circuit court is not void for want of proper allegations touching the citizenship of the parties was directly settled in McCormick v. Sullivant, 10 Wheat. 192, which case has been ever since followed. That this applies to a case removed, though the allegations of the removal papers are not sufficient so far as citizenship alone is concerned, was settled in Des Moines Nav. & R. Co. v. Iowa Homestead Co., 123 U. S. 552, 8 Sup. Ct. 217. In that case, indeed, the removal papers were not only lacking proper allegations, as in the case at bar, but apparently described a proceeding of which the circuit court could not take jurisdiction by reason of facts expressly stated, showing apparently that, as between certain parties, there was no diversity of citizenship. These principles have been quite fully reviewed in Kennedy v. Bank, 8 How. 586, 611, Dowell v. Applegate, 152 U. S. 327, 337, 14 Sup. Ct. 611, and Evers v. Watson, 156 U. S. 527, 15 Sup.

Ct. 430, and need no further expressions from us. It is to be understood that we are considering exactly the case which is before us, wherein the state court proceeded no further, and submitted to the circuit court in its taking jurisdiction and rendering judgment. What complications would have arisen if the state court had proceeded to judgment, as it did in Stone v. State of South Carolina, 117 U. S. 430, 6 Sup. Ct. 799, without any reported action of the circuit court, or if the state court had proceeded with the suit, as it did in Pennsylvania Co. v. Bender, 148 U. S. 255, 13 Sup. Ct. 591, without any action on the part of the circuit court amounting to a judgment, express or implied, that the case has been properly removed, we need not consider.

We refer, as affording practical support to our conclusions on this branch of the defense, to the rule that it is not always necessary that the jurisdictional facts should appear by the petition for removal, and that perhaps they might in this case have been gathered from other parts of the record before the state court at the time the proceedings for removal took place. Steamship Co. v. Tugman, 106 U. S. 118, 121, 1 Sup. Ct. 58. The fact that we are not furnished with everything which was at that time before the state court, without any express stipulation as to what otherwise might have appeared, illustrates the impropriety of assuming to determine the validity of legal proceedings in a superior court of judicature, merely because, in what is presented, errors may be suggested. Voorhees v. Bank, 10 Pet. 449, 476, states the difference between judgments or decrees reversible only by an appellate court and those which are nullities, and urges in vigorous terms the great mischiefs which would come if the former were allowed to be avoided, except on appeal or by writ of error, taken within the time limited therefor by law. We refer to this case, without citing it in extenso, merely adding that the mischiefs it points out would be extensively realized if the numerous cases in the federal courts with reference to which the necessary jurisdictional facts in truth existed could be nullified or collaterally attacked for want of technical allegations such as are said to be lacking in the case at bar.

The defendant, nevertheless, contends that, although the original judgment was not void, yet it was on its face erroneous and voidable on a writ of error as between the parties to it, and that, therefore, it may be collaterally attacked by him. He urges strongly Vose v. Morton, 4 Cush. 27, where the court, in an opinion by Chief Justice Shaw, permitted a judgment of the circuit court of the United States to be attacked collaterally by evidence that the citizenship of the real parties to the controversy was different from that of the nominal parties, so that the circuit court had on the facts no jurisdiction. It may well be assumed, in the present state of the authorities, that, on a writ of error to the supreme court of the United States, the judgment in Vose v. Morton would have been reversed; but it is not necessary to examine that proposition. The basis of that judgment was that, as a matter of fact, the circuit court had no jurisdiction, and that, if the allegations had conformed to the truth, this would have appeared on the face of

the record. The expressions used by Chief Justice Shaw were limited to judgments "erroneous and void." Although the word "void" was, perhaps, not used in the sense of including only judgments which are mere nullities, yet there is nothing which shows it was intended to hold that a judgment can be attacked collaterally merely because it is erroneous. Another case relied on is Downs v. Fuller, 2 Metc. (Mass.) 135, in which a judgment was impeached collaterally on plea and proof, for want of notice to the defendant in the cause. The proposition of the court (on page 138) is that a void judgment may be impeached by plea and proof. The court proceeds that it is generally true that an "erroneous judgment" can be avoided only by appeal; "but," it continues, "this rule does not apply where the party has a right to impeach the judgment, and yet no right to reverse it by a writ of error." This still leaves to be defined the class of errors for which such a party has the right to impeach a judgment. The court illustrates the class by instancing a judgment obtained by fraud or collusion, and is very far from holding that a judgment merely erroneous on its face, and which, after all, may have been justly rendered, can thus be impeached. Another case is Pond v. Makepeace, 2 Metc. (Mass.) 114, where the judgment was recovered by an administrator appointed in another state, the court holding it no bar to a suit by an administrator appointed in Massachusetts. Here the first judgment was broadly inter alios. Still another is Leonard v. Bryant, 11 Metc. (Mass.) 370, where it was held that there was no statutory service of the original writ, the defendant being out of the state. Another is Clark v. Fowler, 5 Allen, 45, in which also the original judgment was obtained without notice to the defendant. And another is Fall River v. Riley, 140 Mass. 488, 5 N. E. 481, which was of the same class as the one last named.

It must be admitted that, although in these various Massachusetts cases the original judgments were spoken of as void, yet, down to the decision last cited, they were not in strictness so regarded, because it had been held by Hendrick v. Whittemore, 105 Mass. 23, and elsewhere, that the judgment of a superior court of judicature in that state was not absolutely void merely for want of proper service or notice, but only voidable. It is true that later the supreme judicial court of Massachusetts followed the supreme court of the United States, and held such judgments nullities; but the later cases do not apply, because it is apparent from the entire tenor of the decisions of the former court that they do not necessarily intend that a judgment cannot be impeached collaterally unless it is strictly void. Nevertheless, the use by Chief Justice Shaw of the words "erroneous and void," and the illustration referred to from Downs v. Fuller, ubi supra, and the character of the cases cited, show conclusively that even with this court the word "void" has some effect beyond the mere word "erroneous." It is not necessary to concede that, if the rule of the supreme judicial court of Massachusetts were otherwise than as we find it, it would bind us in the case at bar. It is sufficient that we find it in harmony with the generally accepted view, and with the de-

cisions of the supreme court of the United States. Except in extreme cases, as where a judgment was beyond the scope of the powers of the court, or no jurisdiction was obtained over the person or the res, or there was fraud or collusion, the decisions of the supreme court are numerous that it cannot be attacked collaterally for mere errors. From them we cite Huff v. Hutchinson, 14 How. 586, 588; Cooper v. Reynolds, 10 Wall. 308, 315; Michaels v. Post, 21 Wall. 398, 428; Colt v. Colt, 111 U. S. 566, 4 Sup. Ct. 553; Mellen v. Iron Works, 131 U. S. 352, 367, 9 Sup. Ct. 781; New Orleans v. Gaines' Adm'r, 138 U. S. 595, 607, 11 Sup. Ct. 428; Insley v. U. S., 150 U. S. 512, 515, 14 Sup. Ct. 158.

But the matter will bear some further investigation. In none of the cases relied on by the defendant has the relation of the parties been that of a person holden to the precise performance of the original judgment, or of some part of it. Fall River v. Riley, ubi supra, was a suit against the sureties on a constable's bond. In the case at bar, the defendant, by his indorsement, stipulated to perform specifically what the original defendant became holden to. It is difficult to see how he can stand any better with it than the original defendant; and that the latter cannot avoid the judgment is fully settled by the citations we have made. The principles and authorities to which we have referred make clear the analogy between the liability of an indorser of an original writ and of bail. While the practice at common law was well settled, by which, pending a writ of error from a judgment of the common pleas or the king's bench, the bail might plead it as a bar until it was disposed of, or obtain a stay by motion, yet no plea on the part of bail directly setting up error can be found in the books, so far as we have been able to examine them. The common plea and the common proceeding on the part of bail, pending a writ of error, are fully stated in Tidd, Prac. pp. 470–475, and in Petersd. Bail, p. 368. The fact that the plea of writ of error pending and the motion to stay were so well known, while no plea of defense of error itself is found in the common-law authorities, affords a very persuasive presumption that there existed no right to the latter. Indeed, scire facias against bail, or against the indorser in this suit, is not strictly a collateral proceeding. It is ancillary to the original judgment, and in execution of it. In a mandamus to enforce the collection of taxes to pay a judgment of the circuit court, in Harshman v. Knox Co., 122 U. S. 306, 317, 7 Sup. Ct. 1171, it was said that that writ is a direct proceeding on the judgment, and in the nature of an execution for the purpose of collecting it. The essence of the suit at bar justifies the same language. By the effect of the statute under which the indorsement was made, the indorser bound himself to pay a specific award, to be enforced against himself by the usual proceedings. These are supplemental to the judgment, and in execution of it. He cannot justly complain if the court declines to reject from his stipulation terms which he impliedly made a part of it. In Sherburne v. Shepard, 142 Mass. 111, 7 N. E. 719, on scire facias against an indorser, the court held that he was a party to the record in the original suit,

and so far interested in it and privy to it that he had a right to be heard on the taxation of costs. We are not required to go to this extent, but the case illustrates in a marked manner the difference between a stranger attempting to impeach a judgment when sought to be enforced by a subsequent original suit, and an indorser or a surety on a bail bond, who has specifically bound himself to perform the precise liability of the original defendant as ascertained by the original suit, and impliedly submitted himself to proceedings therefor by scire facias or other ancillary writ issuing from the court which rendered the original judgment.

On all points submitted to us, our views are with the plaintiff. There will be a judgment for the plaintiff for the amount claimed, with interest thereon from the date of the writ.