LEAK GLOVE MANUF'G CO. v. NEEDLES et al.

(Circuit Court of Appeals, Eighth Circuit. June 4, 1895.)

No. 573.

INDIAN TERRITORY — LAWS IN FORCE—PENALTY FOR NOT EXECUTING PROCESS.
     Under the act of congress of May 2, 1890, c. 182, § 31 (26 Stat. 81, 93), adopting for the Indian Territory certain statutes of Arkansas, including chapter 60 of the statutes of that state, relating to executions, section 3061, part of said chapter 60, and providing a penalty for the failure of an officer to whom an execution is delivered to execute or to return the writ, is an act of congress within the territory, of the same force and effect as if adopted by congress, without any reference to the Arkansas statutes, and is to be enforced by the United States court, as such.

In Error to the United States Court in the Indian Territory.
This was an action by the Leak Glove Manufacturing Company, for the use of J. P. Baden, and J. P. Baden, against Thomas B. Needles, United States marshal for the Indian Territory, and others, for a failure to execute process.     Judgment was rendered for the defendants in the United States court in the Indian Territory.     Plaintiffs bring error.     Reversed.

Jo Johnson filed brief for plaintiffs in error.
William T. Hutchings, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge.     The Indian Territory was without a government, except such as obtained among the several Indian tribes and nations occupying the country.     The jurisdiction of the Indian courts was restricted to Indians.     There was no court which could exercise civil jurisdiction over white men or their property. Out of deference to treaty obligations, probably, congress forebore to give that territory the customary territorial government.     It is still without an executive or legislative department.     The act of congress of March 1, 1889, c. 333 (25 Stat. 783), provided for the appointment of a judge, attorney, marshal, and clerk for the territory.     The marshal was required to give bond "in the sum of ten thousand dollars conditioned as by law required in regard to the bonds of other United States marshals."     It was further provided:

"That the practice, pleadings and forms and modes of proceeding in civil causes shall conform, as near as may be, to the practice, pleadings and forms of proceeding existing at the time in like causes in the courts of record in the state of Arkansas, any rule of the court to the contrary notwithstanding."

It will be observed that this act created a court and adopted a code of procedure, but did not adopt any substantive laws for the court to enforce, or by which the rights and obligations of the citizens in the territory, subject to the jurisdiction of the court, should be regulated and determined.     In the exercise of its exclusive powers of legislation for the territory, congress, by the act of May 2, 1890, c. 182, § 29 et seq. (26 Stat. 81, 93), for the purpose of remedying the defects in the first act, enacted a complete code of substantive laws for the

territory, to be administered by the court it had previously created. This code of laws was taken from the Revised Statutes of the state of Arkansas, and it embraced the body of the statute law of that state. These statutes were adopted and put in force in the territory by reference to the title and number of the chapter as the same appear in the Revised Statutes of Arkansas.

Omitting the title and number of the chapters which have no reference to this case, the thirty-first section of the act reads as follows:

"Sec. 31. That certain general laws of the state of Arkansas in force at the close of the session of the general assembly of that state of 1883, as published in 1884 in the volume known as Mansfield's Digest of the Statutes of Arkansas, which are not locally inapplicable or in conflict with this act or with any law of congress relating to the subjects specially mentioned in this section, are hereby extended over and put in force in the Indian Territory until congress shall otherwise provide, that is to say, the provisions of the said general statutes relating to * * * executions, chapter sixty, * * * and wherever in said laws of Arkansas the courts of record of said state are mentioned, the said court in the Indian Territory shall be substituted therefor; and wherever the clerks of said courts are mentioned in said laws the clerk of said court in the Indian Territory and his deputies, respectively, shall be substituted therefor; and wherever the sheriff of the county is mentioned in said laws the United States marshal of the Indian Territory shall be substituted therefor, for the purpose, in each of the cases mentioned, of making said laws of Arkansas applicable to the Indian Territory."

It will be observed that the act expressly adopts as a law for the Indian Territory the provisions of "the General Statutes of Arkansas relating to * * * executions, chapter sixty." Section 3061 of Mansfield's Digest is a part of chapter 60, entitled "Executions," and reads as follows:

"If any officer to whom execution shall be delivered, shall neglect or refuse to execute or levy the same according to law, or shall take in execution any property, or if any property be delivered to him by any person against whom an execution may have been issued, and such officer shall neglect or refuse to make sale of the property so taken or delivered according to law, or if any such officer shall not return any execution on or before the return day therein specified, or shall make a false return thereof, then, and in any of the cases aforesaid, each officer shall be liable and bound to pay the whole amount of money in such execution specified or thereon endorsed and directed to be levied, and it shall be the duty of the clerk of the court from which any execution may be issued to endorse thereon the time when such execution was returned."

The only question in this case is whether it is the duty of the United States court in the Indian Territory to give effect to this statute. There would seem to be no room for two opinions on this question. Section 3061 of Mansfield's Digest is the law of the Indian Territory, just as much as if it had been enacted by congress in haec verba. It is a mistake to suppose that chapter 60, containing the section in question, is to be treated in the Indian Territory as an Arkansas statute, as would be the case if a question should arise under it in the circuit court of the United States for the district of Arkansas. In the Indian Territory it is an act of congress, and has the same force and effect as if it had been originally adopted by congress without any reference to its prior existence in the state of Arkansas. The act of congress adopting an entire code of laws for the Indian Territory is not to receive the limited and restricted construc-

tion placed upon the process acts (section 914, Rev. St.), which merely required the circuit courts to conform the practice and pleadings in those courts to the practice and pleadings in the state courts "as near as may be." The act adopts in terms chapter 119, entitled "Pleading and Practice," which embraces the entire Civil Code of Procedure of Arkansas. It does not, however, stop with the adoption of the Code of Procedure, as does section 914 of the Revised Statutes, regulating the procedure of the courts of the United States in the states, but it adopts the body of the substantive laws of the state, among which is the chapter on executions we are considering. The power of congress to put this law in force in the territory is not questioned. It is the only legislative body in existence that can pass laws for that territory. The law is not locally inapplicable or in conflict with the act of congress adopting it, nor is it in conflict with "any law of congress relating to the subjects specially mentioned in" section 31. It is cumulative, and not in conflict with the remedy given by law on the bond of the marshal. The two remedies may coexist. They are different, but not conflicting, remedies. In the state from which the statute was taken, the sheriff and his sureties may be sued at law on the sheriff's bond for any official delinquency, or he and his sureties may be proceeded against summarily, as provided by chapter 60, § 3061, Mansf. Dig. Norris v. State, 22 Ark. 525; Herr v. Atkinson, 40 Ark. 377; Atkinson v. Heer, 44 Ark. 174; Jett v. Shinn, 47 Ark. 376, 1 S. W. 693; Hawkins v. Taylor, 56 Ark. 45, 19 S. W. 105; Jones v. Goodbar (Ark.) 29 S. W. 462.

In the case of Gwin v. Breedlove, 2 How. 29, 35, the court said:

"It has therefore never been true that a suit on his bond, governed by the acts of congress, furnished the exclusive remedy as against the marshal himself; and we think that congress intended by the new process act of 1828 to add the cumulative remedies, then existing by statute, in the new states, where they could be made to apply, because they were more familiar to the courts and country, and better adapted to the certain and speedy administration of justice. In our opinion, the act of Mississippi authorizing a judgment, by motion, against a sheriff for failing to pay over moneys collected on execution to the party on demand, or into court at the return day, was adopted by the act of 1828, and does apply in a case like the present, as a mode of proceeding in the courts of the United States held in the district of Mississippi, and could be enforced against the marshal in like manner it could be against a sheriff in a state court."

That the penalty of the law is severe does not affect its validity or prevent congress from putting it in force in the Indian Territory. The rule that the courts of one government will not enforce penalties prescribed by the laws of another has no application to this case, because here the courts were created and the law enacted by the same government.

In the case of Gwin v. Barton, 6 How. 7, 10, Chief Justice Taney, speaking for the court, said:

"In the case referred to [Gwin v. Breedlove, 2 How. 29], the court held that, so far as the statute of Mississippi authorized a summary process against the marshal himself to enforce the payment of the debt, interest, and costs for which he was liable by reason of his default, it was adopted by the act of congress of 1828; but that the courts of the United States could not enforce the

payment of a penalty imposed by the state law, in addition to the money due on the execution. And in the same case the court further held that such summary proceedings against the sureties of a marshal would be repugnant to the act of congress of April 10, 1806; and that, if the plaintiff in the execution sought to charge the sureties for the default of the marshal, he must proceed regularly by action, and obtain his judgment in the manner and form pointed out by that law."

This case and the case of Gwin v. Breedlove, supra, decided no more than that the act of 1828 (section 914, Rev. St.), requiring that the practice and pleadings and forms and modes of proceeding in the courts of the United States shall conform to the state law "as near as may be," does not adopt a state law inflicting penalties on a sheriff, or authorizing summary proceedings against a sheriff and his sureties, though it does authorize a summary proceeding, and judgment against the marshal himself. The compulsory adoption of the state practice in the courts of the United States by section 914 of the Revised Statutes has not always been looked upon with favor by those courts. The clause "as near as may be" in that section has received a liberal interpretation, and, as a consequence of such an interpretation, the practice of the circuit courts has diverged from the practice of the state courts in a good many respects. Walker v. Collins, 8 C. C. A. 1, 59 Fed. 70, and cases there cited. But, for the reasons heretofore stated, the decisions in the cases of Gwin v. Breedlove and Gwin v. Barton, and the other cases limiting the operation of the process act, can have no effect when the law imposing the penalty and prescribing the mode of proceeding has in terms been adopted by congress for a territory. Congress can impose a penalty on the marshal of a territory for official delinquency, and provide for the enforcement of the same against him and his sureties in a summary mode. These are matters resting in the discretion of congress. The mode of proceeding adopted in this case was that which has long been pursued in the state from which the statute was taken, and the presumption is that it was adopted with the construction placed upon it by the state court prior to its adoption by congress. Sanger v. Flow, 4 U. S. App. 32, 1 C. C. A. 56, and 48 Fed. 152.

The judgment of the United States court in the Indian Territory is reversed, and the cause remanded, with instructions to grant a new trial.