FUTURA DEVELOPMENT OF PUERTO RICO, INC., Etc., et al., Plaintiffs—Appellees,

v.

ESTADO LIBRE ASOCIADO DE PUER-TO RICO, The Cooperative Development Administration, The Cooperative Development Company, Defendants—Appellants.

FUTURA DEVELOPMENT OF PUERTO RICO, INC., Plaintiff—Appellant,

v.

ESTADO LIBRE ASOCIADO DE PUER-TO RICO, The Cooperative Development Administration, The Cooperative Development Company, Defendants—Appellees.

Nos. 97–1602, 97–1603.

United States Court of Appeals, First Circuit.

Heard Dec. 4, 1997.

Decided May 6, 1998.

See also: 860 F.2d 1.

Jay A. García–Gregory, with whom Fiddler, González & Rodríguez, Paul B. Smith, Jr. and Smith & Nevares were on brief for appellant Commonwealth of Puerto Rico.

Alan M. Dershowitz, with whom Amy Adelson, Victoria B. Eiger, Nathan Z. Dershowitz, Dershowitz & Eiger, P.C., Geoffrey Woods and Woods & Woods were on brief for appellee/cross appellant Futura Development of Puerto Rico, Inc.

Cherie K. Durand, with whom Law Offices Benjamín Acosta, Jr. was on brief for defendants-appellees.

Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.

TORRUELLA, Chief Judge.

In an earlier proceeding, the predecessor of plaintiff Futura Development of Puerto Rico, Inc. ("Futura") obtained a judgment against the Cooperative Development Company ("CDC"), a public corporation and instrumentality of the Commonwealth of Puerto Rico, in the amount of $12,266,000. *See U.S.I. Properties Corp. v. M.D. Construction Co.,* 860 F.2d 1 (1st Cir.1988). After CDC failed to satisfy the judgment, Futura brought this suit seeking a determination that CDC was an alter ego of the Commonwealth of Puerto Rico, and that, as a de facto party to the earlier litigation, the Commonwealth was liable for the judgment. On this theory of recovery, Futura was awarded summary judgment. *See Futura Devel. of P.R. v. Puerto Rico,* 962 F.Supp. 248 (D.P.R. 1997). Futura also brought six other claims against individual government employees under various causes of action, all of which were dismissed by the district court *sua*

*sponte.* *See id.* The parties cross-appealed to this court. We conclude that the district court acted without proper jurisdiction in awarding summary judgment to Futura on its alter ego theory and improperly dismissed the remaining claims against the individual defendants.

## Background

On October 25, 1988, this court affirmed a district court judgment entered pursuant to a jury verdict against CDC for $12,266,000. *See U.S.I. Properties Corp. v. M.D. Construction Co., Inc.,* 860 F.2d 1 (1st Cir.1988). The jury found that CDC had unilaterally terminated a construction contract with M.D. Construction, predecessor in interest to Futura, which provided for the building of a low-income housing project called "Ciudad Cristiana." The jury in that case rejected CDC's cross-claims alleging that the Ciudad Cristiana property was contaminated with mercury. Jurisdiction in that case was premised entirely upon diversity. *See id.* Now, almost ten years later, this court is faced with the current dispute over satisfaction of that judgment.

CDC is a public corporation that was created by the Puerto Rico Legislative Assembly in order to develop housing cooperatives across Puerto Rico. *See* P.R. Laws Ann. Tit. 5, §§ 981 *et seq.* A majority of the CDC's budget each year is provided by the Commonwealth. Since the original litigation, the Commonwealth has engaged in a de facto liquidation of CDC in order to avoid satisfying the sizable judgment pending against it.

Specifically, the Commonwealth has failed to provide for satisfaction of the judgment in CDC's budgets, stripped CDC of its assets, transferred its employees, and replaced CDC in the organizational chart of Commonwealth agencies and public corporations. During its liquidation, CDC settled debts with some creditors, but not with Futura. CDC, insolvent and devoid of official responsibility, now exists in name only.

Futura, frustrated by these tactics, brought this suit against the Commonwealth in federal court under the court's enforcement jurisdiction.[1] Futura argues that the Commonwealth of Puerto Rico is liable for the original judgment because it was a de facto party to the original litigation. This assertion is supported not only by the generally close relationship between the Commonwealth and the CDC, but specifically by the fact that the Attorney General of Puerto Rico took over the original litigation for CDC. Furthermore, in its closing argument to the jury in that original litigation, CDC argued that any judgment against it would have to be paid with Puerto Rico tax dollars.

The Commonwealth argues that, even if CDC were its "alter ego," it retains Eleventh Amendment immunity from this suit in federal court. Despite its active participation in the defense of the original suit and use of the "tax dollars" argument with the jury, the Commonwealth asserts that it did not implicitly waive its immunity. The district court disagreed, awarding summary judgment in Futura's favor on the first count, and dis-

---

1. Plaintiffs argue that the district court has jurisdiction over this claim under the doctrine of "ancillary jurisdiction" recognized in *Dugas v. American Surety Co.,* 300 U.S. 414, 428, 57 S.Ct. 515, 521, 81 L.Ed. 720 (1937). In *Dugas,* the Court reaffirmed the inherent power of federal courts to exercise jurisdiction in order to enforce their judgments in certain situations where jurisdiction would otherwise be lacking. *Cf. Root v. Woolworth,* 150 U.S. 401, 410–412, 14 S.Ct. 136, 138–39, 37 L.Ed. 1123 (1893) (the first Supreme Court case brought under such jurisdiction). Throughout, we will refer to this type of jurisdiction as "enforcement jurisdiction." We do so because the term "ancillary jurisdiction" is also used with reference to another common law concept of jurisdiction related to "pendent jurisdiction" whereby federal courts obtain jurisdiction over certain claims interposed by parties other than the plaintiff so as to avoid piecemeal litigation. *See* 28 U.S.C.A. § 1367, commentary (West 1993). While this other form of ancillary jurisdiction was joined with pendent jurisdiction and codified in 1990 under the rubric of "supplemental jurisdiction," enforcement jurisdiction remains a creature of common law. To prevent confusion, we will avoid references to ancillary jurisdiction wherever possible, referring instead to supplemental jurisdiction and enforcement jurisdiction. *See* Susan M. Glenn, Note, *Federal Supplemental Enforcement Jurisdiction,* 42 S.C. L.Rev. 469, 472 (1991) (urging that courts distinguish between the two forms of ancillary jurisdiction, adopt more precise terminology in these cases, and analyze questions of enforcement jurisdiction without reference to supplemental jurisdiction doctrine).

missing *sua sponte* Futura's remaining claims against the individual defendants. *See* 962 F.Supp. at 257–58. Because we conclude that the district court acted without proper jurisdiction, we do not reach the questions raised regarding implicit waiver of Eleventh Amendment immunity.

### *Analysis*

### I. Enforcement Jurisdiction

■ The first question to be resolved in this case is whether the district court properly exercised jurisdiction over Futura's claim against the Commonwealth. The parties acknowledge that federal question jurisdiction is inapplicable to Futura's alter ego claim, and that the Commonwealth of Puerto Rico is not subject to diversity jurisdiction. *Cf.* 28 U.S.C. § 1332(d) (Puerto Rico treated as a "state" for purposes of the statute, and therefore not subject to diversity jurisdiction); *Nieves v. University of P.R.*, 7 F.3d 270, 272 (1st Cir.1993). Futura's primary jurisdictional argument is that federal jurisdiction over the alter ego claim against the Commonwealth of Puerto Rico is premised upon federal enforcement jurisdiction. However, in actions such as this, where the district court had original jurisdiction founded solely on diversity jurisdiction, extending enforcement jurisdiction over a non-diverse party without sound reasons for doing so may represent an impermissible expansion of federal jurisdiction. At the same time, it is generally recognized that "without jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'" *Peacock v. Thomas*, 516 U.S. 349, 356, 116 S.Ct. 862, 868, 133 L.Ed.2d 817 (1996) (quoting *Riggs v. Johnson County*, 6 Wall. 166, 187, 18 L.Ed. 768 (1868)). Futura argues that under the doctrine of enforcement jurisdiction, federal courts generally possess jurisdiction over new proceedings in which a federal judgment creditor seeks to impose liability for a judgment on a person or entity not named in the original judgment, even where there is no independent basis for federal jurisdiction. However, Futura's argument fails in light of recent Supreme Court doctrine.

In *Peacock*, the Supreme Court explained that it had "never authorized the exercise of [enforcement] jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357, 116 S.Ct. at 868. In that case, Thomas, the plaintiff, had obtained a large ERISA class action judgment against his former employer, Tru–Tech, Inc. Instead of paying the judgment, Peacock, an officer and shareholder of Tru–Tech, settled Tru–Tech's debts with other creditors, including himself, and ignored the debt owed to Thomas. After collection efforts proved unsuccessful, Thomas sued Peacock in federal court using a "veil-piercing" rationale. Despite the absence of an independent jurisdictional basis for the proceeding, the district and circuit courts agreed to exercise enforcement jurisdiction in piercing the corporate veil. The Supreme Court reversed, explaining that there was insufficient factual dependence between the claims raised in Thomas' suits to justify the extension of enforcement jurisdiction. *See id.* at 354–55, 116 S.Ct. at 866–67.

■ Through *Peacock*, the Court reaffirmed the doctrine that "[i]n a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction." *Id.* at 355, 116 S.Ct. at 867 (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380–81, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994); *H.C. Cook Co. v. Beecher*, 217 U.S. 497, 498–99, 30 S.Ct. 601, 601–02, 54 L.Ed. 855 (1910)). The Court reasoned that, while a proper exercise of enforcement jurisdiction will result in efficiencies which outweigh comity concerns, an exercise of enforcement jurisdiction over a factually independent proceeding has no practical benefit for judicial economy. *See id.* at 355–56, 116 S.Ct. at 867–68. Where a plaintiff plans to use the federal court to examine the defendant's identity and finances, as Thomas did in his veil-piercing claim, the court is asked to delve into a new and separate matter, and an independent

basis for jurisdiction is required. This situation is distinguishable from where a party uses a post-judgment proceeding to challenge or revisit an issue or determination made by the federal court in the original proceeding.

Futura attempts to distinguish *Peacock* on two grounds. First, Futura argues that, under *Peacock*, enforcement jurisdiction will only be refused where the new defendant's liability is premised upon that party's actions which took place *after* the original judgment was rendered. According to Futura, the Commonwealth's liability stems from its actions *before* and *during* the original litigation, so *Peacock* is inapposite. This nuanced interpretation misses the rationale of the case.

■ *Peacock* holds that enforcement jurisdiction does not exist in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a new defendant whenever the new proceeding lacks factual dependence upon the old proceeding. Obviously, subsequent proceedings based upon defendant's actions occurring *after* the original proceeding will *necessarily* be factually independent from the primary proceeding.[2] However, *Peacock* is broader than that. Extending enforcement jurisdiction to factually independent subsequent proceedings will not serve the purpose of judicial efficiency whether those proceedings premise liability upon pre- or post-judgment actions. *Peacock* does not limit itself, explicitly or implicitly, as Futura argues. Moreover, *Peacock*'s discussion of other relevant circuit and Supreme Court case law confirms that its holding is as broad as dictated by its logic.

The *Peacock* Court specifically declared that it had granted certiorari to resolve a split among the various federal courts of appeals. *See id.* at 352, 116 S.Ct. at 865–66, *comparing Thomas v. Peacock*, 39 F.3d 493 (4th Cir.1994); *Argento v. Melrose Park*, 838 F.2d 1483 (7th Cir.1988); *Skevofilax v. Quigley*, 810 F.2d 378 (3d Cir.1987) (en banc) and *Blackburn Truck Lines, Inc. v. Francis*, 723 F.2d 730 (9th Cir.1984) *with Sandlin v. Cor-*

*porate Interiors Inc.*, 972 F.2d 1212 (10th Cir.1992) and *Berry v. McLemore*, 795 F.2d 452 (5th Cir.1986). In both *Sandlin* and *Berry*, the two cases that *Peacock* ultimately supports, the circuit courts refused to exercise enforcement jurisdiction over factually independent subsequent proceedings where the new defendants' liability was premised upon those parties' actions *before* the original judgments were rendered. Furthermore, in *H.C. Cook Co. v. Beecher*, a 1910 case reaffirmed by the Court in *Peacock*, the Court held that enforcement jurisdiction would be refused to parties attempting to make new defendants answerable for an earlier judgment. *Beecher* also involved alleged liability on the part of new defendants based upon those defendants' *pre-judgment* actions. *See Beecher*, 217 U.S. at 498–99, 30 S.Ct. at 601–02; *Thomas v. Peacock*, 39 F.3d 493, 500–01 (4th Cir.1994). The *Peacock* Court stated that *Beecher* was binding upon it. *See* 516 U.S. at 357–58, 116 S.Ct. at 868–69. Thus it is clear that *Peacock*'s holding is not limited to subsequent proceedings in which the new defendant's liability is premised upon that party's post-judgment actions.

■ Futura's other attempt to distinguish *Peacock* is futile as well. Futura claims that since the Commonwealth is the alter ego of CDC, the Commonwealth is not really a "new" defendant. According to this argument, whereas Peacock was not liable for the primary judgment until after the subsequent hearing, the Commonwealth was liable to Futura from the moment that the jury returned its verdict in the original proceeding. Thus, the viability of Futura's argument depends entirely upon our ruling that, unlike a generic veil-piercing claim, which represents a substantive rule of liability, an alter ego claim is a mere factual determination that identifies an original judgment debtor.

Although we do not discount the possibility that some other alter ego claims can be so characterized, in *this* case, the Commonwealth and CDC are undeniably separate

---

**2.** Enforcement jurisdiction can extend to post-judgment conduct in cases where mandamus is sought to force compliance with an existing judgment. However, it cannot extend to most cases that seek to assign liability for the judgment to a new party. *See Peacock*, 516 U.S. at 358, 116 S.Ct. at 868–69 (*citing Labette County Comm'rs v. United States ex rel. Moulton*, 112 U.S. 217, 5 S.Ct. 108, 28 L.Ed. 698 (1884); *Riggs*, 6 Wall. (73 U.S.) 166, 18 L.Ed. 768).

jural entities, and CDC (but not the Commonwealth) was the original judgment debtor. *See* P.R. Laws Ann. tit. 5, § 981(d) (stating that the Commonwealth is not liable for the debts of CDC). It is clear, then, that this alter ego claim seeks to do more than simply identify the original judgment debtor.

It cannot be denied that this case is separate from the original proceeding. Like the veil-piercing claim in *Peacock*, an alter ego claim involves an independent theory of liability under equity, complete with new evidence. *See* Note, *Piercing the Corporate Law Veil: The Alter Ego Doctrine Under Federal Common Law*, 95 Harv. L.Rev. 853, 853 n. 1 (1982) (veil-piercing and alter ego claims are part of the same doctrine).[3] Although a judgment entered pursuant to such a finding can affect previously existing judgments and other debts, the claim requires a subsequent and distinct inquiry from the court.

To adopt Futura's argument, we would be forced to treat the corporate form of CDC as a complete nullity—to look through its legal identity to the party standing behind it—and to do so under the guise of making a factual determination necessary to determine our subject matter jurisdiction over this case. *Cf. United States v. United Mine Workers*, 330 U.S. 258, 292 n. 57, 67 S.Ct. 677, 695 n. 57, 91 L.Ed. 884 (1947). This would be an unwarranted expansion of our jurisdiction. Alter ego/veil-piercing claims involve a substantive theory for imposing liability upon entities that would, on first blush, not be thought liable for a tort or on a contract. *See, e.g., Resolution Trust Corp. v. Smith*, 53 F.3d 72, 79–80 (5th Cir.1995); *Thomas v. Peacock*, 39 F.3d 493, 499 (4th Cir.1994), *rev'd on other grounds*, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996).

Thus, the Commonwealth is in the same position as the defendants in *Beecher* and *Sandlin*, who had also been sued under alter ego rationales. *See Sandlin*, 972 F.2d at 1217–1218. As previously discussed, *Peacock* supports both cases, wherein the federal courts ultimately refused to extend enforcement jurisdiction. Thus, insofar as alter ego theories require factually independent proceedings, they will not subvert the rule of *Peacock*. This rule is determinative in this case.

## II. Supplemental Jurisdiction

■ In the alternative, Futura argues that its alter ego claim is within the district court's supplemental jurisdiction because that claim is so related to its civil rights claims against the individual defendants, claims over which the court undeniably has original jurisdiction, that it forms part of the same case or controversy. *See* 28 U.S.C. § 1367. We do not find this argument persuasive.[4]

Although its alter ego claim has pre- and post-judgment components, Futura carefully crafted the allegations in its alter ego claim to emphasize the pre-judgment relationship between the Commonwealth and CDC. It stressed the close ties between CDC and the government that existed before and during the original case. It did so because its only chance to penetrate Puerto Rico's Eleventh Amendment immunity was to argue that the Commonwealth, through its behavior in the case, waived its immunity. Futura recognized that, were it to rely upon the Commonwealth's post-judgment liquidation of CDC in its alter ego claim, Puerto Rico would have Eleventh Amendment immunity from the claim that would be virtually unassailable, as no waiver of such immunity can be inferred

---

3. Futura's argument that an alter ego determination fundamentally differs from a generic veil-piercing is somewhat undermined by Futura's own complaint, which declares that "[t]he corporate entity [sic] of CDC must be disregarded and its veil pierced, and [the Commonwealth] be declared the alter ego of CDC."

4. We note that Futura did not plead supplemental jurisdiction as an alternative basis for jurisdiction over its alter ego claim. Nor has plaintiff moved to amend the jurisdictional allegations in its complaint pursuant to 28 U.S.C. § 1653. There is a legitimate question as to whether Futura may preserve its judgment simply by suggesting an alternative jurisdictional theory in its brief. *See Limerick v. Greenwald*, 749 F.2d 97, 100 n. 2 (1st Cir.1984) (doubting the applicability of 28 U.S.C. § 1653 in similar circumstances). However, because we conclude that we may not exercise jurisdiction over Futura's alter ego claim under 28 U.S.C. § 1367, we need not resolve this issue.

from the Commonwealth's post-judgment conduct. Futura's alter ego claim simply cannot be saved by the argument that it forms part of the same case or controversy as the civil rights claims, all of which are premised upon post-judgment conduct. And even if we were to agree that there existed sufficient relatedness between Futura's claims against the individual defendants and the post-judgment components of Futura's alter ego claim to bring these components within our supplemental jurisdiction, the Eleventh Amendment would, for reasons already explained, render us powerless to grant Futura any relief against the Commonwealth.

■ In any event, we do not find sufficient relatedness between these claims because there is no common nucleus of operative facts shared by both the civil rights claims and the alter ego claim. *See BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers,* 132 F.3d 824, 833 (1st Cir.1997) (federal courts may only assert supplemental jurisdiction under 28 U.S.C. § 1367 where the claims arise from the same "nucleus of operative facts"). The claims do not overlap in theory or chronology. The cases are sufficiently distinct to require an independent jurisdictional basis. Any holding to the contrary would be inconsistent with the jurisdictional requirements of section 1332, and thus in direct contravention of section 1367.[5]

■ As the district court observed, the Commonwealth of Puerto Rico "stood behind CDC in filing an action of questionable merit in this Court, and when that backfired and resulted in an adverse judgment of $12.3 million, it sought to preclude collection of the same." 962 F.Supp. at 257. Indeed the Commonwealth's treatment of M.D. Construction/Futura throughout these proceedings has been despicable, and may result in hesitation by contractors to do business with public corporations funded by Puerto Rico, as well as other dire consequences for its financial reputation. However, federal courts are of limited jurisdiction, and may not weigh the equities of a case until jurisdiction has been established. *See Hercules,* 516 U.S. at 430, 116 S.Ct. at 989. In this case, Puerto Rico, like any state, enjoys the sovereign privilege not to be sued in federal court under diversity. Having concluded that neither enforcement nor supplemental jurisdiction exists over this suit, we must turn a blind eye to any perceived injustices delivered at the hands of the Puerto Rican government.[6]

### III. *Sua Sponte* Dismissal of Futura's Other Claims

■ After awarding summary judgment for Futura on the first cause of action, the district court dismissed the six remaining causes of action Futura had brought against individual defendants. Although the district court's desire to dispose of these claims is understandable in light of its having provided for the full satisfaction of the original judgment through its award of summary judgment on the first cause of action, the *sua sponte* dismissal of these remaining claims was premature. Because we herein vacate the district court's award of partial summary judgment, these remaining claims become even more potentially significant.

■ This court has held that, in limited circumstances, *sua sponte* dismissals of com-

---

**5.** Recognizing the possibility that *Peacock* might govern this appeal, Futura argues that an appropriate remedy is not a dismissal of this case, but rather a remand to the district court with instructions to deem the first cause of action in this case a motion under P.R. R. Civ. P. 59 for a declaratory judgment that the Commonwealth is the party in interest in the original litigation and required to comply with the judgment. However, we cannot do so. Having determined that federal courts have no enforcement or supplemental jurisdiction over this proceeding, we similarly have no authority for a declaration along the lines suggested by Futura. *See Hercules, Inc. v. United States,* 516 U.S. 417, 430, 116 S.Ct.

981, 989, 134 L.Ed.2d 47 (1996) (federal courts are "constrained by our limited jurisdiction and may not entertain claims 'based merely on equitable considerations.' ") (quoting *United States v. Minnesota Mut. Inv. Co.,* 271 U.S. 212, 217–18, 46 S.Ct. 501, 503, 70 L.Ed. 911 (1926)).

**6.** Thus, we do not reach many of the substantive issues in this case, including whether CDC actually was an alter ego of the Commonwealth, whether the issue is precluded by a post-trial order in the earlier litigation, and whether Puerto Rico's Eleventh Amendment immunity applies to this claim.

plaints under Rule 12(b)(6) of the Federal Rules of Civil Procedure are appropriate. *See Wyatt v. City of Boston,* 35 F.3d 13, 14 (1st Cir.1994). However, such dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond. *See id.; Street v. Fair,* 918 F.2d 269, 272 (1st Cir. 1990) (per curiam); *Literature, Inc. v. Quinn,* 482 F.2d 372, 374 (1st Cir.1973).

In this case, Futura's initial complaint contained four causes of action against individual defendants, each a government employee. The individuals were sued under the Equal Protection Clause, Due Process Clause, and for federal civil rights violations and tortious interference with contractual relationships under Puerto Rico law. These causes of action were improperly pled in the initial complaint because they contained insufficient factual allegations to establish a causal nexus between the named defendants' conduct and the alleged violations of law. *See* 962 F.Supp. at 257. After receiving various motions to dismiss and a Magistrate's Report and Recommendation that these claims be dismissed, the district court dismissed the claims without prejudice. Futura then filed an amended complaint, devoting sixty pages exclusively to detailed claims against the individual defendants. This amended complaint also contained two completely new claims under the Contracts Clause and Puerto Rican tort law. Without any notice to the parties in this case, the district court dismissed with prejudice all causes of action against the individual defendants. The district court cursorily concluded that "the amended verified complaint does not ... cure the defects of the original one [because it] fails to draw a nexus between the individual defendants and the government's scheme to preclude payment of the judgment in his favor." *Id.* at 258.

The district court erred in dismissing these claims *sua sponte* without providing the parties with notice and an opportunity to respond. *See Wyatt,* 35 F.3d at 14. The

amended complaint contained new causes of action and more specific allegations of fact. Futura reasonably believed that its amended complaint addressed the court's initial concerns, and was entitled to address any new or continuing infirmities that the court perceived.[7] Accordingly, the dismissal of these claims is reversed, and they are remanded for further proceedings.

## *Conclusion*

For the reasons stated herein, we *vacate* the district court opinion as to count one of the verified amended complaint and *dismiss* that count. We *reverse* the district court's *sua sponte* dismissal of counts two through seven and *remand* those claims for further proceedings consistent with this opinion. Finally, we wish to note again the manifest injustice of the conduct of the government of the Commonwealth of Puerto Rico throughout this affair. It has cleverly used its sovereignty to shield itself from the fair consequences of its actions, and has been aided by recent Supreme Court doctrine. *Peacock,* however, is a relatively new case, and circuit courts are applying it differently. *Cf. Matos v. Richard A. Nellis, Inc.,* 101 F.3d 1193, 1195 (7th Cir.1996) (remarking that after *Peacock,* it is "not altogether clear" in which types of federal litigation an independent ground of jurisdiction is necessary to pierce the corporate veil). As the doctrine of enforcement jurisdiction evolves, perhaps fewer unjust consequences will flow from it. This case might be well-served by the Supreme Court's attention.

*No costs.*

---

7. We note that, upon review, we are unable to determine *how* the amended verified complaint fails to draw a sufficient nexus between the defendants and the alleged wrongdoing. Without opining as to the ultimate survivability of these claims under Rule 12(b)(6), we expect that, on remand, the district court will provide Futura with more guidance as to the perceived failings in the amended complaint.